UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Michelle Remick,

       Plaintiff,

vs.

Lake State Industries, Inc.,

       Defendant.           Civ. No. 07-1033 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Lake State Industries, Inc. ("Lake State"), for Summary Judgment.  A Hearing on the Motion was conducted on June 12, 2008, at which time, the Plaintiff Michelle Remick ("Remick") appeared by Jean M. Brandl, and Elizabeth A. Cloutier, Esqs.; and Lake State appeared by Stephen W. Cooper, Esq.  For reasons which follow, we recommend that Lake State's Motion be granted in part.

## II.  Factual and Procedural Background

In her Amended Complaint, Remick asserts claims against her former employer, Lake State, for violations of Title VII, and the Pregnancy Discrimination Act (the "PDA"), Title 42 U.S.C. §2000e, et seq.; the Americans with Disabilities Act (the "ADA"), Title 42 U.S.C. §12101, et seq.; and the Minnesota Human Rights Act (the "MHRA"), Minnesota Statutes Section 363.01, et seq.  See, Amended Complaint, Docket No. 38.[1]  Many of the underlying facts are disputed between the parties, and accordingly, we view those facts in a light most favorable to Remick, as the non-moving party.  See, Coleman v. Parkman, 349 F.3d 534, 536 (8th Cir. 2003).

On June 29, 2005, Remick began working at Lake State, as a full-time stainless steel finisher.  See, Defendant's Exhibit B, Docket No. 83.  Her job duties required her to lift twenty-five (25) pounds, and to use tools, including a belt sander, a flopper, a studgun, a hacksaw, a rotary gun, and wrenches.  See, Second Affidavit of Michelle Remick ("Second Remick Aff."), Docket No. 96, at ¶7;  see also, Remick Deposition,

---

[1]By Order dated March 19, 2008, we granted Remick's Motion to Amend her Complaint, in order to permit a claim for punitive damages.  See, Order, Docket No. 53.

at pp. 77-83.[2]   During the course of Remick's employment, Lake State had an

Employee Policy Manual, which cites the PDA, and which states as follows:

> An employer may not pre-establish * * * [a] mandatory
> beginning date for maternity leave (e.g., beginning of third
> trimester).  An employer cannot force an employee to take
> time off for pregnancy or a pregnancy-related condition,
> unless the condition prevents the employee from being able
> to do her job.

Plaintiff's Exhibit 3, Docket No. 95; see also, Plaintiff's Exhibit 2, Docket No. 95,
("Kurpiers Deposition") at pp. 129-135.[3]

---

[2]At the Hearing, counsel for Lake State argued that we should disregard Remick's
Second Affidavit, based upon Lake State's contention that the Affidavit directly
contradicts Remick's deposition testimony, as well as her First Affidavit.   See,
Defendant's Reply Memorandum, Docket No. 101, at 1, citing Camfield Tires, Inc.
v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983)("If a party who has been
examined at length on deposition could raise an issue of fact simply by submitting an
affidavit contradicting his own earlier testimony, this would greatly diminish the
utility of summary judgment as a procedure for screening out sham issues of fact.").
For reasons expressed in the text of this Report, we conclude that Remick's Second
Affidavit does not improperly contradict her deposition testimony, and accordingly,
we cite to the Affidavit here.

We also cite to the transcript of Remick's deposition, which Lake State
submitted after the Hearing.  However, the complete transcript was not docketed as
an exhibit.

[3]Lake State has argued, at various times, that the Employee Policy Manual is
inapplicable because Remick was employed for only seven (7) months, and because
the Manual states that, "[i]n order to qualify for a pregnancy leave of absence, an
employee must have completed at least one (1) year of service to [Lake State]."
Plaintiff's Exhibit 3, Docket No. 95.  The provision, however, refers to the Family and
(continued...)

In August of 2005, Remick learned that she was pregnant, and she avers that she informed several of her co-workers, at Lake State, about her pregnancy, including Steve Kurpiers ("Kurpiers"), who is the owner of Lake State, and Kurt Behsman ("Behsman"), who was Remick's immediate supervisor.[4]  Id. at ¶¶13-14; Remick Deposition, at pp. 118-120.

However, in September of 2005, Remick suffered a miscarriage.[5]  Id. at ¶15. On Friday, September 23, 2005, without objection from Lake State, Remick took one (1) day off for a surgical procedure related to the miscarriage, and she attests that, for a period of several days, she was unable to care for herself or work, as she was unable to bend, twist, or stand, due to her symptoms of the miscarriage.  Id.  Nonetheless, on Monday, September 26, 2005, Remick was able to return to work in her full capacity.

---

[3](...continued)
Medical Leave Act, Title 29 U.S.C. §§2601 et seq., which limits its protection, in part, to employees who have been employed "for at least 12 months by the employer with respect to whom leave is requested."  Title 29 U.S.C. §2611(2)(A)(I).  The PDA does not contain any similar limitation.

[4]In his deposition testimony, Kurpiers testified that Remick did not inform him of her pregnancy in August of 2005, but he acknowledged that he "got word from the employees."  See, Plaintiff's Exhibit 2, Docket No. 95, ("Kurpiers Deposition") at p. 52.

[5]Prior to her employment at Lake State, Remick suffered four (4) earlier miscarriages, between 2000 and 2003.  See, Remick Deposition, at pp. 58-61.

Id.  According to Remick, her obstetrician, John P. Wust III, M.D. ("Dr. Wust"), assured her that her work duties had not caused her miscarriage, and that she would be able to continue working at full capacity, if she became pregnant again.[6] Id. at ¶16; Remick Deposition, at pp. 211, 216.

In December of 2005, Remick again learned that she pregnant, and she informed Kurpiers and Behsman of the pregnancy.[7]   Id. at ¶¶20-21; Remick Deposition, at p. 120.   Remick also asked Kurpiers if light-duty work would be available at the end of her pregnancy, in the event that her pregnancy later prevented her from performing all of her work duties.  Id. at ¶21; see also, Defendant's Exhibit

---

[6]At the Hearing, counsel for Lake State represented that, in his deposition testimony, Dr. Wust denied having any information about Remick's job duties. However, our review of the transcript excerpts, which were submitted by the parties, discloses that Dr. Wust testified only that, as of September 19, 2005, he did not know what Remick did for a living.  See, Defendant's Exhibit 4, Docket No. 105, ("Wust Deposition") at p. 37.  To the extent that this testimony creates a dispute of fact, it is best resolved at Trial.

[7]Again, Kurpiers testified that he "was never told" that Remick was pregnant in December of 2005, but he also testified that he had heard the information from other employees, including his daughter, Eve Kurpiers, who informed him, in December of 2005, that Remick was pregnant. See, Kurpiers Deposition, supra at pp. 54-55, 160-161.

G, Docket No. 86 ("Kurpiers Deposition")[8] at p. 88; Remick Deposition, at pp. 448,

450.  According to Remick, Kurpiers informed her that he did not see any problem

with her request, and he directed her to speak with Behsman.[9]  Id. at ¶21; Remick

Deposition, at p. 191.  In contrast to her conversation with Kurpiers, Behsman told her

that "there would never be light duty [work] available for [Remick]."  Id. at ¶25;

Remick Deposition, at pp. 191, 451.  Remick attests that she did not require any

immediate light-duty work, or other accommodations, at the time of her conversations

with Kurpiers and Behsman.  Id. at ¶¶24-25; Remick Deposition, at pp. 130-131.

For his part, Behsman attests that, "[i]n December 2005/January 2006, Michelle

Remick informed me that, because of her pregnancy, she was unable to perform the

essential functions of her job."  Affidavit of Kurt W. Behsman ("Behsman Aff."),

Docket No. 88, at ¶3.  At his deposition, Behsman testified that Remick began

"shirking" her work responsibilities in mid-December of 2005, "[b]ecause she felt that

she would endanger her pregnancy."  Defendant's Exhibit H, Docket No. 86,

--------

[8]The parties have each submitted portions of Kurpiers' deposition transcript.

[9]Here, Kurpiers testified that he "didn't say that she could not do it, or [he] didn't say that she could do it," but he also testified that, if Remick had needed light-duty work due to her pregnancy, he "would have done anything for her, if she would have requested it."  Kurpiers Deposition, supra at p. 68.

("Behsman Deposition") at pp. 58-59.  Behsman further testified that Remick requested light-duty work immediately, because "[s]he felt she couldn't do her job." Id. at pp. 90-91.

Instead, Behsman attests that Lake State "offered [Remick] a leave until she felt that she was able to work," but instead, Remick chose to "quit working."  Behsman Aff., at ¶10.  Remick denies Behsman's assertion, and she attests that she was "fully capable of doing all aspects of [her] job," and that she "never refused to perform any of [her] work."  Second Remick Aff., supra at ¶6.  In addition, Remick has submitted an Affidavit from Steven Scheiterlein ("Scheiterlein"), who worked next to Remick at Lake State, and who attests that, "when [Remick] was pregnant, her work performance did not change," and that he "was never aware of [Remick] refusing to do her job or refusing to perform any of her assignments."  Affidavit of Steven Scheiterlein ("Scheiterlein Aff."), Docket No. 97, at ¶¶1-2, 5.

After her conversations with Kurpiers and Behsman, Remick soon learned that her baby had died and, on December 23, 2005, she experienced a spontaneous miscarriage.  See, Second Remick Aff., supra at ¶¶20, 25.  Without objection from Lake State, Remick took six (6) days off, from December 23 through December 30,

- 7 -

2005, to recover.[10]  Id. at ¶¶28-29.  During her recovery, Remick was unable to work, due to her symptoms of abdominal pain, bleeding, and cramping.  Id. at ¶28.  Remick was also unable to care for herself, lift anything, stand up straight, or perform any household tasks.  Id.  On January 3, 2005, she returned to work at full capacity.  Id. at ¶30.

On January 22, 2006, Remick learned that she was again pregnant, and on January 24, 2006, Dr. Wust confirmed the pregnancy.  Id. at ¶32.  On January 25, 2006, Remick informed Kurpiers and Behsman of her pregnancy.[11]  Id. at ¶¶34-35; Remick Deposition, at pp. 123, 174-175, 177.  Remick also provided Kurpiers with a letter from Dr. Wust, which was dated January 24, 2006, and which advised that Remick had missed work on the previous day owing to a doctor's appointment.  Id.

---

[10]Remick provided Lake State with a letter from Dr. Wust, which is dated January 4, 2006, and which includes the return address for Dr. Wust's practice -- Northern Ob-Gyn Associates.  See, Defendant's Exhibit E, Docket No. 84 ("First Wust Letter"). In that letter, Dr. Wust advises that Remick "is currently under our medical care," and he asks Lake State to excuse Remick from work, for the period from December 23 through December 30, 2005.  Id.

[11]Again, at his deposition, Kurpiers testified that he did not recall Remick informing him that she was pregnant in January of 2006, but instead, he stated that he "heard it on the air waves, rumormill."  Kurpiers Deposition, supra at pp. 77-78.  He also testified that his daughter, Eve Kurpiers, informed him, in December of 2005, and in January of 2006, that Remick was pregnant.  Id. at pp. 160-161.

at ¶¶34-35; <u>Remick Deposition</u>, at p. 175.  In that letter, Dr. Wust asked that Remick "be excused intermittently for care during the next several months."  <u>Defendant's Exhibit E</u>, <u>Docket No. 84</u> ("Second Wust Letter").

Remick worked on both January 25 and 26, 2006, and she was able to perform all of her duties.  See, <u>Second Remick Aff.</u>, supra at ¶¶35, 37, 43.  According to Remick, on January 25, 2006, Eve Kurpiers ("E. Kurpiers"), who is Kurpiers' daughter, and who works as a secretary at Lake State, showed her a letter, which E. Kurpiers "was in the process of faxing to insurance agent, Anita Zack."  <u>Id.</u> at ¶36. In the letter, E. Kurpiers wrote that, "[w]ith the cost of Michlle's [sic] medical bills for high-risk OB-GYN Care, we could NOT afford it."  <u>Plaintiff's Exhibit 5</u>, <u>Docket No. 95</u> [emphasis in original].[12]

On Monday, January 30, 2006, Remick arrived at work and found a letter from Kurpiers in her time card slot, instead of her time card.  See, <u>Second Remick Aff.</u>, supra at ¶38.  Remick was unable to punch in for work, owing to the absence of her time card, and she "suspected that this was probably a termination of employment

---

[12]E. Kurpiers has submitted an Affidavit, in which she attests that Remick "never received health coverage from Lake State," and that "[o]nly a few, long-term employees receive health care benefits from Lake State."  <u>Affidavit of Eve Kurpiers</u>, <u>Docket No. 102</u>, at ¶¶2-3.

- 9 -

because that is how Steve Kurpiers fires his employees." Id.  The letter, which was

dated January 20, 2006, read as follows:

> After numerous warnings & advisories from your current
> doctors' [sic] of your fragile & restrictive physical status,
> we have been advised to inform you that you should take
> time off from your employment here until your physical
> situation stabilizes.
>
> That was the purpose of the recently enacted Family Leave
> Act; to enable you to take time off (without pay) and retain
> your position until a later date that would seem to fit to all
> parties, should your need for employment & ours still exist
> at this later date.
>
> It has been indeed a pleasure having you work here & trust
> for the best of health & happiness in your future.

Defendant's Exhibit A, Docket No. 83.

As noted, the letter was signed by Kurpiers.  Id.

Notwithstanding the assertions in the letter, Kurpiers admitted, at his

deposition, that he did not speak with Dr. Wust, nor any of Remick's physicians,

before writing the letter.  See, Kurpiers Deposition, supra at p. 97.  Instead, Kurpiers

testified that four (4) or five (5) weeks before he wrote the letter, he had informed his

workers' compensation insurer that Remick had suffered several miscarriages.  Id. at

p. 105.  In response, the insurer advised Kurpiers that Remick should take time off

from her employment, because "she could get injured on the job or could file a claim

- 10 -

against us for something that she got injured, could blame the job for." Id. at pp. 103-105.  When asked about the "physical condition" he had referenced in the letter, Kurpiers testified that he was generally referring to Remick's well-being, and specifically to her miscarriages.  See, Kurpiers Deposition, supra at p. 109.[13]

When asked, Kurpiers testified that he did not list any grounds for discipline or termination in the letter -- such as incompetence, insubordination, tardiness, or absences -- because he had "no reason to."  Id. at pp. 135-136, citing Plaintiff's Exhibit 3, Docket No. 95 ("Employee Policy Manual").  Indeed, Kurpiers testified that Remick "was not slacking," that he had not heard any complaints about her work, that

---

[13]At Kurpiers' deposition, the following exchange occurred between Remick's counsel and Kurpiers:

| | |
|---|---|
| Question: | "Isn't [pregnancy] the physical situation you're talking about here [in the letter]?" |
| Answer: | "The miscarriages, which I was told that there were several." |
| Question: | "Okay." |
| Answer: | "So the miscarriages." |
| Question: | "So you were concerned about miscarriages?" |
| Answer: | "And their health, her health, general well being, regardless of what it was from." |

she had not been disciplined, and that "Mr. Drake told me that she was doing a good job[.]"[14]  Id. at pp. 39, 76, 119.

In addition to his conversation with the insurer, Kurpiers also testified that Remick had asked him to write a letter of termination, so that she could apply for unemployment benefits.  Id. at p. 78.  He acknowledged placing the letter in Remick's time card slot, but he testified that Remick could have punched in "if she wanted to," by finding herself a time card.  Id. at pp. 89-90.  According to Kurpiers, he wrote the letter "on a Friday, and it went in Monday with the Monday time cards."  Id. at p. 93.[15]

_____

[14]By comparison, Behsman testified that Remick was not fulfilling her responsibilities in January of 2006, although he did not write her up.  See, Behsman Deposition, supra at p. 65.  In addition, Behsman attested that he had a conversation with Kurpiers about Remick's performance.  Id.

[15]Kurpiers' letter was dated January 20, 2006, which was a Friday.  However, Kurpiers testified that he wrote the letter on a Friday evening, and that "the next time she came in, the letter was in the slot."  Kurpiers Deposition, supra at p. 92.  Remick testified that she informed Kurpiers of her pregnancy on January 25, 2006, which was a Wednesday, and she further testified that she found the letter in her time slot on January 30, 2006, which was a Monday.  At his deposition, Kurpiers testified that he did not think that he "held [the letter] for a week or ten days before it was put in the slot," but he conceded that "whether it was written on the exact date of the calendar is questionable."  Id. at pp. 93, 96.

For her part, Remick denies asking Kurpiers to terminate her employment.  See, Second Remick Aff., supra at ¶51.  Remick attests that she had no idea that her employment might be terminated, or that she might be placed on involuntary medical leave, prior to receiving Kurpiers' letter.  Id. at ¶40.  Remick never received any formal or informal discipline, during the course of her employment at Lake State, id. at ¶55, and she attests that, as of January 30, 2006, her only "physical condition" was her pregnancy.  Id. at ¶43.

Some time later, on March 23, 2006, E. Kurpiers wrote a letter, in which she stated as follows:

> Michelle was NOT FIRED due to discrimination -- my boss did not want to see her dou[b]led over in pain & hemmoraghing [sic] or passing out -- THEN WE WOULD BE THE TARGET OF A **MAJOR LAWSUIT** IF SHE MISCARRIED OR GOT HURT ON THE JOBSITE!!!!
>
> My boss told her she could continue her job after her pregnancy - HE WAS LOOKING OUT FOR HER WELFARE!!! AND THAT OF HER UNBORN CHILD!!!  SHE WAS NOT "FIRED" AT ALL!!!!!

Plaintiff's Exhibit 6, Docket No. 95 [emphasis in original].

However, Remick attests that other Lake State employees had disabling medical conditions, but were not forced to take medical leave.  See, <u>Second Remick Aff.</u>, supra at ¶49; see also, <u>Scheiterlein Aff.</u>, supra at ¶7.

Based upon the foregoing facts, Remick contends that Lake State violated Title VII, the PDA, and the MHRA, by terminating her employment because of her pregnancy.  See, <u>Amended Complaint</u>, supra at pp. 4-5, 7-8.  She also claims that Lake State violated the ADA, by terminating her employment based upon a perceived disability -- namely, her pregnancy and pregnancy-related conditions.  <u>Id.</u> at p. 9.

Lake State now moves for Summary Judgment as to each of Remick's claims. See, <u>Defendant's Motion for Summary Judgment</u>, <u>Docket No. 79</u>.  With respect to Remick's claims under Title VII, the PDA, and the MHRA, Lake State contends that Remick was neither terminated, nor constructively discharged from her employment. See, <u>Defendant's Memorandum in Support</u>, <u>Docket No. 80</u>, at 2, 19.  With respect to Remick's claim under the ADA, Lake State asserts that Remick is not disabled, within the meaning of that statute.  <u>Id.</u> at 24.  Remick opposes the Motion, and we address the parties' arguments in turn.

### III.  Discussion

A.    Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Planned Parenthood of Minnesota/ South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 2004); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474

(8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

Lastly, "[b]ecause [employment] discrimination cases often turn on inferences rather than on direct evidence, [Courts] are particularly deferential to the non-moving party." Webb v. Garelick Mfg. Co., 94 F.3d 484, 486 (8th Cir. 1996); see also, Peterson v. Scott County, 406 F.3d 515, 520 (8th Cir. 2005); Wheeler v. Aventis Pharmaceuticals, 360 F.3d 1151, 1156 (8th Cir. 2004); Bassett v. City of Minneapolis., 211 F.3d 1097, 1099 (8th Cir. 2000). Nevertheless, while "summary judgment should seldom be granted in employment discrimination cases, if [the Plaintiff] fails to establish a factual dispute on each element of the prima facie case, summary judgment is appropriate." Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 762 (8th Cir. 1995); quoting Weber v. American Express Co., 994 F.2d 513, 515-516 (8th Cir. 1993); see also, Lynn v. Deaconness Medical Center - West Campus, 160 F.3d 484, 486-87 (8th Cir. 1998).

B.   Legal Analysis.

1.   Remick's Second Affidavit.   We first address Lake State's objection to Remick's Second Affidavit, which is based on the ground that a witness cannot contradict sworn deposition testimony with an Affidavit. Some months ago,

in support of a Motion to Amend her Complaint, Remick submitted her First

Affidavit, which read in pertinent part as follows:

> I never requested "Light Duty" work and never requested
> a different work assignment than what I was hired for.  I
> was never unable to do my work and in fact from the time
> I found that I was pregnant on January 24, 2006 until my
> notice of termination on January 30, 2006 I reported to
> work every workday and was able to perform my duties
> without difficulty.    I never requested a special
> accommodation for my pregnancy or for any other reason
> because I did not need any.

First Affidavit of Michelle Remick ("First Remick Aff."), Docket No. 25, at ¶7.

By contrast, in her Charge of Discrimination to the Minnesota Department of Human

Rights, and in her Amended Complaint, Remick alleges that, in December of 2005,

she discussed the possibility of light-duty work with both Kurpiers and Behsman,

before learning that she had miscarried that pregnancy.  See, Defendant's Exhibit C;

Amended Complaint, supra at ¶¶13-14.  At one point in her deposition, Remick

testified that she did not ask Kurpiers about accommodations, and that her

conversation with Behsman had, in fact, occurred in January of 2006.  See, Remick

Deposition, at pp. 123-124, 131-132, 190.  However, she later testified that the

conversations had occurred in December of 2005.  Id. at pp. 368, 448-451.

- 18 -

Following her deposition, Remick submitted a Second Affidavit, in which she attests that, in early December of 2005, she asked Kurpiers "what might be done at the end of the pregnancy if [she] needed accommodation," and Kurpiers advised her to "talk to Mr. Behsman if [she] needed light duty [work]." Second Remick Aff., supra at ¶21. Remick also attests that she was "very clear with Mr. Kurpiers that [her] possible need for accommodation was not for the present, but for the distant future at the end of the pregnancy." Id. Remick maintains that, in early December of 2005, she also spoke with Behsman about the possibility for light-duty work, but Behsman "brusquely informed [her] that there would never be light duty [work] available for [her] * * * ." Id. at ¶25.

In addition, Remick clarifies her deposition testimony, and avers as follows:

> During my first deposition, on January 21, 2008, I was asked whether I had ever requested light duty in December, 2005. At the time I [sic] it had been two years and I had forgotten about the conversation. When questioned further, I remembered inquiring as to whether accommodation might be available in the distant future if I needed it at the end of my pregnancy. Though my memory was refreshed about the conversation, I was still confused about exactly when it had taken place. (Def. Ex. F, Remick, pp. 123-124). Later in the same deposition, I was shown my previous statements to the Department of Human Rights where I had indicated that the light duty conversation took place in December. At that point, I agreed that the

- 19 -

> statements were written closer in time to the event and that
> I must have had the conversation in December.  (Def. Ex.
> F, Remick, pp. 190-192).  Since the January 21, 2008
> deposition, I have had time to think, and believe that the
> conversation did occur in December 2005.

<u>Id.</u> at ¶27.

Lake State now argues that Remick has demonstrated a "cavalier attitude toward

giving false and contradictory sworn testimony," through her Affidavits and

deposition testimony.  See, <u>Defendant's Reply Memorandum</u>, <u>Docket No. 101</u>, at 4.

As a consequence, at the Hearing, counsel for Lake State argued that the Court

could not consider Remick's Second Affidavit, based upon Lake State's contention

that Remick's prior attestations contradict her deposition testimony.  In response,

Remick explained that she had become confused during her deposition, when the

timeframe of the questions switched between December of 2005, and January of 2006.

In addition, Remick later corrected herself in her deposition testimony, and testified

that her conversations with Kurpiers and Behsman had occurred in December of 2005.

Lake State also contends that Remick's First Affidavit contained false

statements, and that Remick admitted as much.    See, <u>Defendant's Reply</u>

<u>Memorandum</u>, supra at 2, citing <u>Remick Deposition</u>, at pp. 369-370.  At the Hearing,

Remick's counsel argued that, although the First Affidavit might have been poorly drafted, it was intended to explain that Remick never requested **immediate** light-duty work -- instead, she asked only about the possibility of light-duty work, should an advanced stage of pregnancy ultimately prevent her from fulfilling her regular work duties.  Remick's counsel further argued that Remick is not an attorney, nor is she a sophisticated litigant, and Remick asserts that the First Affidavit is truthful, even if it failed to adequately address the distinction between an immediate request and a future request.

Here, we are unable to find that Remick's averments impeach her deposition testimony.  See, Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1366 (8th Cir. 1983)(subsequent Affidavit may be appropriate to explain certain aspects of deponent's testimony, or instances where the prior testimony reflects confusion on the deponent's part).  Of course, we recognize, under Eighth Circuit authority, "that a party cannot create a 'sham' issue of fact in an effort to defeat summary judgment by filing an affidavit directly contradicting deposition testimony."  Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1030 (8th Cir. 2000), citing Camfield Tires, Inc. v. Michelin Tire Corp., supra at 1365-66; see also, City of St. Joseph v. Southwestern Bell Telephone, 439 F.3d 468, 476 (8th Cir. 2006).  Nonetheless, "there are 'narrow

circumstances' in which a subsequent affidavit is appropriate, such as to explain certain aspects of the deposition testimony or where the prior testimony reflects confusion on the part of the witness." Id. at 1030-31, citing Camfield Tires, Inc. v. Michelin Tire Corp., supra at 1364-65.

Accordingly, a conflict in Remick's statements must be resolved in her favor, for purposes of Summary Judgment, "unless the inconsistency represents only an effort by the plaintiff to manufacture a sham issue of fact." Roberts v. Park Nicollet Health Services, 528 F.3d 1123, 1126 (8th Cir. 2008)(concluding that the conflict between the plaintiff's statements in her sworn charge of discrimination, application for unemployment benefits, and deposition testimony "is a legitimate dispute for a finder of fact to resolve"); City of St. Joseph v. Southwestern Bell Telephone, supra at 476; Wilson v. Westinghouse Electric Corporation, 838 F.2d 286, 289 (8th Cir. 1988).

Our review of the Record reveals that, at the time of her deposition, Remick appears to have become confused about the timeframe of her conversations with Kurpiers and Behsman, but that she later corrected herself, such that her deposition testimony contains inconsistent statements. However, Remick has consistently denied asking for any **immediate** light-duty work, while admitting that she asked about the

possibility of **future** light-duty work, although she did not always make that distinction plain during the course of intensive questioning.  The use of an Affidavit to explain such discrepancies is appropriate under Camfield.  "[W]hen the affiant states in his affidavit that he was confused in his deposition or where the affiant needs to explain portions of his deposition testimony that were unclear, the district court should not strike the affidavit from the record."  City of St. Joseph v. Southwestern Bell Telephone, supra at 476, citing Camfield Tires, Inc. v. Michelin Tire Corp., supra at 1364-65; see also, Popoalii v. Correctional Medical Services, 512 F.3d 488, 498 (8th Cir. 2008)("Post-deposition contradictory affidavits are admitted only when the prior deposition testimony shows confusion, and the subsequent affidavit helps explain the contradiction."), citing Cuffley v. Mickes, 208 F.3d 702, 707 (8th Cir. 2000), cert. denied, 532 U.S. 903 (2001); Herring v. Canada Life Assur. Co., supra at 1031 ("In the instant case, Dr. Duckworth stated in his affidavit that he 'confused' the occupation of Herring with that of his son, and offered a plausible reason why," and "[w]e think this is the unique type of situation in which a subsequent affidavit is appropriate to clarify, rather than contradict, a deposition."); Kim v. Ingersoll Rand Co., 921 F.2d 197, 199 (8th Cir. 1990)("Although Kim's trial testimony appears to conflict with his earlier deposition testimony, it contains an explanation for the

apparent discrepancy," and "it was for the jury to weigh the credibility of that testimony and to accept or reject Kim's explanation * * * .").

On the state of this Record, we conclude that Remick's Affidavits fall within the "narrow circumstances" exception that was recognized in Camfield, and Herring, and that they properly create a factual issue for the Jury's determination.[16] Accordingly, we turn to consider the merits of Remick's claims.

2.    Remick's Claims under Title VII, the PDA, and the MHRA.

a.    Standard of Review.   Both Title VII, and the MHRA, prohibit an employer from discharging an employee, or discriminating against an employee with respect to compensation, terms, conditions or privileges of employment, on the basis of sex.  See, Title 42 U.S.C. §2000e-2(a)(1); Minnesota Statutes Section 363A.08, Subdivision 2.  As amended by the PDA, Title VII defines "sex" to include pregnancy and childbirth, as well as related medical conditions.  See, Title 42 U.S.C. §2000e(k).  The MHRA similarly defines "sex" to include pregnancy, childbirth, and related disabilities.   See, Minnesota Statutes Section 363A.03,

---

[16]Moreover, we find that the alleged discrepancies between the Affidavits, and Remick's deposition testimony, are largely irrelevant to our analysis of Lake State's Motion for Summary Judgment.

Subdivision 42.[17]   "Thus, to prevail on her pregnancy discrimination claim, [the plaintiff has] the burden to show that she was 'treated differently because of her pregnancy' or a pregnancy-related condition." Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 435 (8th Cir. 1998), quoting Geier v. Medtronic, Inc., 99 F.3d 238, 241 (7th Cir. 1996).

"Plaintiffs may prove discrimination in Title VII claims in two ways:  with direct evidence as in the Price Waterhouse approach, or with indirect evidence as in the McDonnell Douglas analysis." Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1045 (8th Cir. 2005), citing Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004); see also, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

b. Direct Evidence. A plaintiff "may proceed under Price Waterhouse if she produces direct evidence of conduct or statements by persons involved in the decision-making process, which indicate a discriminatory attitude was

---

[17]"Analysis of discrimination claims under the MHRA is identical to that under Title VII." Scheidecker v. Arvig Enterprises, Inc., 122 F. Supp.2d 1031, 1040 n. 7 (D. Minn. 2000), citing Smith v. DataCard, 9 F. Supp.2d 1067, 1078-79 (D. Minn.1998); see also, Hanenburg v. Principal Mut. Life Ins. Co., 118 F.3d 570, 574 (8th Cir. 1997)(applying Title VII analysis to a pregnancy discrimination claim under the MHRA).

more likely than not a motivating factor in the employer's decision." Kratzer v. Rockwell Collins, Inc., supra at 1045-46, citing Price Waterhouse v. Hopkins, supra at 258; see also, McGinnis v. Union Pacific R.R., 496 F.3d 868, 873 (8th Cir. 2007); Russell v. City of Kansas City, Mo., 414 F.3d 863, 866 (8th Cir. 2005); Shaffer v. Potter, 499 F.3d 900, 903-04 (8th Cir. 2007); Deneen v. Northwest Airlines, Inc., supra at 436.[18]  "In short, direct evidence only exists if no inference is necessary to show that the employer was acting in a discriminatory manner." Sura v. Stearns Bank, N.A., 2002 WL 31898167 at *4 (D. Minn., December 18, 2002), citing Erickson v. Farmland Indus., Inc., 271 F.3d 718, 725 (8th Cir. 2001), citing, in turn, Browning v. President Riverboat Casino-Mo, Inc., 139 F.3d 631, 635 (8th Cir. 1998).

Once a plaintiff has provided direct evidence of a discriminatory animus, the defendant then has the burden "to show that it more likely than not would have made the same decision without consideration of the illegitimate factor." Id. at 1046, citing Price Waterhouse v. Hopkins, supra at 258.  "Evidence of the employer's motives for the action, and whether the presence of a mixed motives defeats the plaintiff's claim,

---

[18]Our Court of Appeals has held that "Justice O'Connor's opinion concurring in the judgment [in Price Waterhouse] is the controlling opinion that sets forth the governing rule of law." Gross v. FBL Financial Services, Inc., 526 F.3d 356, 359 (8th Cir. 2008), petition for cert. filed, 77 USLW 3229 (October 1, 2008), citing Erickson v. Farmland Indus., Inc., 271 F.3d 718, 724 (8th Cir. 2001).

is a trial issue, not intended for summary judgment." Kratzer v. Rockwell Collins, Inc., supra at 1046, citing Griffith v. City of Des Moines, supra at 735.

Here, we find that Remick has produced direct evidence of Lake State's discriminatory animus. In his deposition, Kurpiers admitted that he knew of Remick's pregnancy in January of 2006, when he wrote the letter which purported to place Remick on involuntary medical leave. See, Kurpiers Deposition, supra at p. 65. Kurpiers also testified that Remick's work performance was satisfactory, that he was not aware of any problems with her performance, and that she was never disciplined for failure to perform her duties. Id. at p. 76. He admitted that he never spoke with Remick's physician -- despite including that erroneous statement in his letter -- nor was he told that Remick had a "fragile or restrictive physical status." Id. at pp. 97-99, 102-103. Instead, Kurpiers testified that, in his letter, he was referring to Remick's miscarriages as her "fragile or restrictive physical status," and he further testified that his workers' compensation insurer had advised him to place Remick on leave, in order to avoid a potential claim for workers' compensation benefits. Id. at pp. 103-109. In addition, Kurpiers admitted that he knew that it was illegal to place an employee on

involuntary medical leave solely because of pregnancy.  Id. at pp. 130-133; see also, Plaintiff's Exhibit 3, supra (Employee Policy Manual).[19]

Based upon Kurpiers' testimony, Remick has provided direct evidence of discriminatory animus.  In addition, Kurpiers wrote the letter, which purported to place Remick on involuntary medical leave, and which amounts to direct evidence "of conduct or statements by persons involved in the decision-making process, which indicate a discriminatory attitude was more likely than not a motivating factor in the employer's decision."  Kratzer v. Rockwell Collins, Inc., supra at 1046, citing Price Waterhouse v. Hopkins, supra at 258.  Such evidence is "'sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision' to take the adverse employment action."  Deneen v. Northwest Airlines, Inc., supra at 436, quoting Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997).

For its part, Lake State argues that Remick was not terminated, and therefore, she cannot sustain an action under the PDA.[20]  See, Defendant's Memorandum in

---

[19]As noted by Remick, we need cite only to Kurpiers' deposition testimony to locate this direct evidence, as no citation to her Second Affidavit is required.

[20]Lake State also argues that Remick was not constructively discharged, and
(continued...)

Support, supra at 19 ("[A]ll Defendant did was place the Plaintiff on a medical leave which Defendant believed she wanted."). However, Remick denies requesting leave, or termination, and the law of our Circuit is clear that an involuntary medical leave is an adverse employment action, which gives rise to liability under Title VII, and the PDA. See, Deneen v. Northwest Airlines, Inc., supra at 436 (affirming District Court's determination that plaintiff had presented direct evidence of discriminatory animus where, "[w]ithout any real knowledge of a physical limitation, [her supervisor] stated that [the plaintiff] could not return to work from layoff status without a note from her physician because of her pregnancy-related condition"); Carney v. Martin Luther Home, Inc., 824 F.2d 643, 648 (8th Cir. 1987)(holding that the plaintiff "presented direct evidence of discrimination by establishing that the defendant placed her on unpaid medical leave as a result of a '[pregnancy-]related medical condition'"). Here, Remick has produced direct evidence that she was placed on involuntary medical leave, despite her asserted ability to work. This showing amounts to direct evidence of discriminatory animus, and an impermissible adverse employment action. Although Lake State seeks to distinguish Deneen and Carney, by arguing that Remick

---

[20](...continued)
indeed, at the Hearing, we observed that Remick does not appear to assert any claim for constructive discharge. As a result, we do not address such a claim further.

was free to return from leave whenever she felt capable of working, we find that argument unavailing.[21]

Moreover, Lake State has failed to offer any legitimate reason for placing Remick on involuntary medical leave, given the absence of evidence to show that she was medically unable to perform her work. At the Hearing, Lake State argued, for the first time, that Remick was discharged for performance problems, based upon Behsman's testimony, in which he stated that Remick had refused to perform her work duties for fear of miscarriage. See, <u>Behsman Deposition</u>, supra at pp. 58-59, 90-91. Remick disputes Behsman's testimony, see, <u>Second Remick Aff.</u>, supra at ¶6, and, as we have noted, Kurpiers testified that he was not aware of any problems with Remick's work performance, and that she was never disciplined for poor work performance. See, <u>Kurpiers Deposition</u>, supra at pp. 39, 76, 119.

Notwithstanding Lake State's conclusory assertion, that Remick was terminated for a legitimate reason, she "has sufficient evidence that unlawful discrimination was **a** motivating factor in the defendant's adverse employment action," and "the presence

---

[21]In the alternative, at the Hearing, Lake State argued that Remick asked for immediate light-duty work, or to be terminated, so that she could secure unemployment benefits. However, Remick denies those factual assertions, and such factual disputes are appropriate for resolution at Trial.

- 30 -

of additional legitimate motives will not entitle the defendant to summary judgment."
Griffith v. City of Des Moines, supra at 735 [emphasis added]; see also, Kratzer v.
Rockwell Collins, Inc., supra at 1046 ("Evidence of the employer's motives for the
action, and whether the presence of a mixed motives defeats the plaintiff's claim, is
a trial issue, not intended for summary judgment."); see also, Piantanida v. Wyman
Center, Inc., 927 F. Supp. 1226, 1237 (E.D. Mo. 1996), aff'd, 116 F.3d 340 (8th Cir.
1997)("[T]o the extent that a pregnant employee is able and willing to work, in spite
of her concerns regarding risk to the fetus, the PDA protects her right to remain in the
work place."), quoting Armstrong v. Flowers Hospital, Inc., 33 F.3d 1308, 1316 (11th
Cir. 1994).

As a result, Lake State has failed to adequately support its request for Summary
Judgment, and therefore, we recommend that Lake State's Motion for Summary
Judgment be denied, insofar as it relates to Remick's claims under Title VII, the PDA,
and the MHRA.

c.      Indirect Evidence.  Where the plaintiff presents only indirect
evidence of discrimination, we apply the familiar burden-shifting analysis of
McDonnell Douglas Corp. v. Green, supra at 800-04.  See, Kratzer v. Rockwell
Collins, Inc., supra at 1046; Shaffer v. Potter, supra at 904-05; Kerns v. Capital

Graphics, Inc., 178 F.3d 1011, 1017 (8th Cir. 1999).  Accordingly, the plaintiff must establish a prima facie case of discrimination, by presenting evidence which demonstrates: "(1) she was a member of a protected group; (2) she was qualified for her position; and (3) she was discharged under circumstances giving rise to an inference of discrimination."  Bergstrom-Ek v. Best Oil Co., 153 F.3d 851, 857 (8th Cir. 1998), quoting Hanenburg v. Principal Mut. Life Ins. Co., 118 F.3d 570, 574 (8th Cir. 1997), citing, in turn, Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996).

If a prima facie case is established, then the burden shifts to the defendant to provide a non-discriminatory reason for its action.  Id., citing Lang v. Star Herald, 107 F.3d 1308, 1311 (8th Cir. 1997), cert. denied, 522 U.S. 839 (1997), citing, in turn, Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270-71 (8th Cir. 1996).  "If [the employer] offers a nondiscriminatory reason, the burden shifts to [the employee] to show that she has sufficient admissible evidence from which a rational factfinder could find that [the employer's] proffered reason was false or not the real reason for its action, and that intentional discrimination was the real reason."  Id. at 857-58, citing Lang v. Star Herald, supra at 1311.

Here, there is no dispute that Remick was pregnant in January of 2006, and therefore, she was a member of a protected class.  Likewise, there does not appear to be any serious dispute that she was qualified for her position.  As noted, Behsman testified that Remick refused to perform at least some of her duties.  See, Behsman Deposition, supra at p. 51.  However, even Behsman admits that Remick was capable of performing her job as a stainless-steel finisher, id. at p. 56, and Kurpiers testified that, insofar as he was aware, Remick was performing her job to expectations.  See, Kurpiers Deposition, supra at pp. 118-19.  Notwithstanding Behsman's testimony, "[u]nder the qualification prong, a 'plaintiff must show only that he possesses the basic skills necessary for performance of the job,' not that he was doing it satisfactorily."  McGinnis v. Union Pacific R.R., supra at 874 n. 2, quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2nd Cir. 2001)("[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw."); see also, Arnold v. Nursing and Rehabilitation Center at Good Shepherd, LLC, 471 F.3d 843 (8th Cir. 2006).  Accordingly, there is no showing, on this Record, that Remick was less than qualified for her position.

Once again, however, Lake State argues that Remick was not terminated, and therefore, she cannot show that she was impermissibly discharged because of her

pregnancy. See, Defendant's Memorandum in Support, supra at 1. As noted, Lake State contends that it "would have welcomed [Remick] back to work, whenever she indicated that she wished to [perform her regular duties]." Id. at 2; see also, Kurpiers Deposition, supra at p. 118 ("She was never terminated," "[s]he was placed on leave.").

Nevertheless, as we have already addressed, even if Lake State's letter simply placed Remick on an involuntary medical leave, our Court of Appeals has recognized a violation of Title VII, and the PDA, where an employer placed an employee "on an unpaid leave during her pregnancy at a time when she remained able to perform her job." Carney v. Martin Luther Home, Inc., supra at 643; see also, Kerns v. Capital Graphics, Inc., supra at 1016 ("Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard[.]"), citing Cross v. Cleaver, 142 F.3d 1059, 1073 (8th Cir. 1998). Accordingly, Remick has produced indirect evidence of an adverse employment action, in the form of an involuntary medical leave.

Consequently, the burden necessarily shifts to Lake State to provide a non-discriminatory reason for its actions. Here, Lake State asserts that Remick requested the leave, or alternatively, that she was placed on leave because she refused to perform

certain of her duties.  In response, Remick argues that those proffered reasons are

pretextual.  See, <u>Plaintiff's Memorandum in Opposition</u>, supra at 36-38.  Our Court

of Appeals recently addressed the plaintiff's burden in showing pretext, as follows:

> A plaintiff may make a sufficient showing of pretext by
> different means, including showing that an employer:  (1)
> failed to follow its own policies, Ledbetter v. Alltel
> Corporate Servs., Inc., 437 F.3d 717 (8th Cir. 2006); (2)
> treated similarly-situated employees in a disparate manner,
> Putman v. Unity Health Sys., 348 F.3d 732 (8th Cir. 2003);
> and (3) made substantial changes over time in its proffered
> reason for an employment decision, Kobrin v. Univ. of
> Minn., 34 F.3d 698 (8th Cir. 1994), cert. denied, 522 U.S.
> 1113, 118 S.Ct. 1046, 140 L.Ed.2d 111 (1998).

<u>Arnold v. Nursing and Rehabilitation Center at Good Shepherd, LLC</u>, supra at 847.

In his testimony, Kurpiers admitted that he had knowledge of Lake State's Employee

Policy Manual, and he further admitted that he knew it was illegal to place an

employee on involuntary medical leave solely because of pregnancy.  See, <u>Kurpiers</u>

<u>Deposition</u>, supra at pp. 130-133.

When asked why his letter made no mention of incompetence, tardiness,

absence, or insubordination, as reasons for Remick's leave or discharge, Kurpiers

testified that he had "no reason" to list any grounds for disciplinary action.  <u>Id.</u> at pp.

135-136.  Lastly, through her Second Affidavit, and the Affidavit of her co-worker,

Scheiterlein, Remick has presented evidence that Lake State had male employees with

health conditions, who were not required to take involuntary medical leave.  See, Second Remick Aff., supra at ¶49; Scheiterlein Aff., supra at ¶7.  Accordingly, we conclude that Remick has made a sufficient showing of pretext so as to survive Summary Judgment under the McDonnell Douglas regimen.

Accordingly, even if Remick had not produced direct evidence of pregnancy discrimination, we find, in the alternative, that Remick has proven a prima facie case of pregnancy discrimination, based upon indirect evidence, pursuant to the McDonnell Douglas test.  Therefore, we recommend that Lake State's Motion for Summary Judgment be denied, on this alternative basis, with respect to Remick's claims under Title VII, the PDA, and the MHRA.

3.    Remick's Claim under the ADA.

a.    Standard of Review.  "To establish a prima facie case of disability discrimination, a plaintiff must show:  (1) that she was disabled, (2) that she was qualified to do the essential job function with or without reasonable accommodation, and (3) that she suffered an adverse action due to her disability." Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008), citing EEOC v. Wal-Mart Stores, Inc., 477 F.3d 561, 568 (8th Cir. 2007); Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 948 (8th Cir. 1999).  Based upon our analysis to

this point, Remick was qualified to perform her job, and her involuntary medical leave constituted an adverse employment action.  Accordingly, we turn to consider whether Remick was disabled within the meaning of the ADA.

Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." Title 42 U.S.C. §12102(2)(A).  Another District Court in this Circuit recently observed that, according to the EEOC Technical Assistance Manual, "'[o]ther conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments.'" Gorman v. Wells Manuf. Corp., 209 F. Supp.2d 970, 975 (S.D. Iowa 2002), aff'd, 340 F.3d 543 (8th Cir. 2003), quoting Title 29 C.F.R. §1630.2(h). "Moreover, 'temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.'" Id., citing Title 29 C.F.R. §1630.2(j).

b.    Legal Analysis.  In support of her ADA claim, Remick contends that she was disabled due to a pregnancy-related condition -- namely, abnormal blood clotting in the umbilical cord, which caused her multiple miscarriages. See, Plaintiff's Memorandum in Opposition, supra at 41.  Remick also contends that, during the course of each miscarriage, she suffered debilitating pain, cramping, and

heavy bleeding, which rendered her physically unable to work, or to care for herself, during those periods of time.  See, <u>Second Remick Aff.</u>, supra at ¶¶15, 28.[22]

Several Courts have concluded that pregnancy-related conditions, such as those described by Remick, can constitute a physical impairment within the meaning of the ADA, but **only** if that condition is sufficiently long-lasting.  See, e.g., <u>LaCoparra v. Pergament Home Centers, Inc.</u>, 982 F. Supp. 213, 228 (S.D.N.Y.1997)(Although "[t]he record supports [the plaintiff's] claim that she suffered from a history of infertility, a prior miscarriage, and spotting and cramping during the 1994 pregnancy," "[t]here is no evidence * * * that any of these conditions were chronic or resulted in long-term or permanent impact."), overruled on other grounds, <u>Kosakow v. New Rochelle Radiology Associates, P.C.</u>, 274 F.3d 706 (2nd Cir. 2001); <u>Cerrato v. Durham</u>, 941 F. Supp. 388, 393 (S.D.N.Y. 1996)(denying Motion to Dismiss, where

---

[22]The definition of disability also includes having "a record of such an impairment," or "being regarded as having such an impairment."  <u>Title 42 U.S.C. §12102(2)(B-C)</u>.  Alternatively, Remick argues that she had a record of disability because she suffered multiple miscarriages, both before and during her employment at Lake State, and that Lake State regarded her as disabled, because of Kurpiers' mistaken perception that she was "fragile," and unable to lift enough weight to perform her work duties.  See, <u>Plaintiff's Memorandum in Opposition</u>, supra at 43-44; see also, <u>Kurpiers Deposition</u>, supra at pp. 52-56, 78, 106-110, 142-47, 160-61.  Since we conclude that Remick has not alleged any condition which properly qualifies as an impairment, Remick's ADA claim fails under all three (3) of the ADA's definitions of disability.

plaintiff alleged pregnancy-related conditions including spotting, leaking, cramping, dizziness, and nausea, as well as facts which supported her assertion that such complications substantially limited her ability to work); <u>Garrett v. Chicago School Reform Board of Trustees</u>, 1996 WL 411319 at *3 (N.D. Ill., July 19, 1996)(denying Motion to Dismiss, where plaintiff alleged severe morning sickness which substantially limited her ability to attend school); <u>Patterson v. Xerox Corp.</u>, 901 F. Supp. 274, 278 (N.D. Ill. 1995)(denying Motion to Dismiss, where plaintiff alleged severe back pain which substantially limited her ability to work). Nevertheless, "the majority of federal courts hold that absent unusual circumstances pregnancy-related complications do not constitute a disability under the ADA." <u>Gorman v. Wells Manuf. Corp.</u>, supra at 975-76 (collecting cases).

In <u>Gorman</u>, which was decided in this Circuit, the Court acknowledged that pregnancy-related complications could constitute a disability under the ADA, but only if the plaintiff's complications were sufficiently serious, and were not limited to the short term. <u>Id.</u> at 976. As a result, the Court concluded that the plaintiff's symptoms, which consisted of periodic nausea, vomiting, dizziness, severe headaches, and fatigue, and which lasted approximately one (1) week, were not sufficient to constitute a disability under the ADA. <u>Id.</u>; see also, <u>LaCoparra v. Pergament Home Centers,</u>

Inc., supra at 228 (concluding that a history of infertility, a prior miscarriage, and spotting and cramping during a pregnancy, were not sufficiently long-term to qualify as an impairment under the ADA).

We find the facts here to be analogous, given that Remick only suffered short-term effects from each of her miscarriages.  See, Second Remick Aff., supra at ¶¶15 (missed one (1) day of work, and recovered over the weekend), 28-29 (missed six (6) days of work and was briefly unable to work or care for self).  As a result, Remick has failed to demonstrate that her alleged disability caused a substantial limitation in any major life activity.  "As defined in 29 C.F.R. §1630.2(i), the term major life activity means 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'"  Krauel v. Iowa Methodist Medical Center, 95 F.3d 674, 677 (8th Cir. 1996).  In turn, a substantial limitation occurs when an individual is "significantly restricted as to the condition, manner, or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  Title 29 C.F.R. §1630.2(j)(1)(ii).

Here, Remick was unable to care for herself or work, for a period of one (1) week at most, during the course of a miscarriage.  See, <u>Second Remick Aff.</u>, supra at ¶¶28-29.  As a result, we conclude, as a matter of law, that Remick's pregnancy-related condition did not constitute an impairment, within the meaning of the ADA, given the brief duration of her inability to care for herself, or to work.  Accordingly, we recommend that Lake State's Motion for Summary Judgment be granted, with respect to Remick's ADA claim.[23]

In sum, we recommend that Lake State's Motion for Summary Judgment be granted in part.

NOW, THEREFORE, It is --

---

[23]Lake State also asserts that Remick's ADA claim is barred because she failed to present that claim in her Charge of Discrimination to the Minnesota Department of Human Rights.  See, <u>Defendant's Reply Memorandum</u>, supra at 6.  As a result, Lake State contends that Remick's ADA claim is now time-barred.

However, at the Hearing, we noted that Lake State had failed to plead any affirmative defense which was based upon failure to exhaust, or upon the statute of limitations.  See, <u>Answer</u>, <u>Docket No. 3</u>; see also, <u>Lawrence v. Cooper Communities, Inc.</u>, 132 F.3d 447, 451 (8th Cir. 1998)(The timely filing of a charge within the 300- or 30-day period is not an essential requisite of the Court's subject matter jurisdiction, but it is "a condition precedent and, 'like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'"), quoting <u>Zipes v. Trans World Airlines</u>, 455 U.S. 385, 393 (1982).  In any event, because we conclude that Remick's ADA claim fails for other reasons, we do not reach Lake State's statute of limitations defense.

RECOMMENDED:

That the Motion of the Defendant Lake State Industries, Inc., for Summary Judgment [Docket No. 79] be granted solely to the extent of the Plaintiff's claim under the Americans with Disabilities Act.


Dated:  December 2, 2008                    s/Raymond L. Erickson
                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than December 19, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than December 19, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.